UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BERNARD HOUSTON,

    Petitioner,

vs.

A. P. KANE, Warden,

    Respondent.

No. C 05-03369 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

In 1984 petitioner was found guilty of first-degree murder in Los Angeles County Superior Court and sentenced to prison for twenty-six years to life. On August 5, 2004, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole. Ex. G at 48-55. Petitioner exhausted these parole claims by way of state habeas petitions. The Superior Court of California for the County of Los Angeles provided a reasoned opinion, ex. B at 1-3; the California Court of Appeal and the California Supreme Court summarily denied the petitions filed in those courts, ex. D & F.

///

**DISCUSSION**

**I.    Motion for Judicial Notice**

Petitioner's motion for judicial notice of a state court opinion filed since briefing was completed will be denied as unnecessary. The court will consider all relevant case law as of the date of this decision.

**II.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## III.   Issues Presented

Petitioner contends that (1) the Board of Prison Terms's denial of parole based on the unchanging circumstances of his crime, twenty-one years after he committed it, violated due process; (2) the Board's failure to set a specific term of years for petitioner to serve violated due process; and (3) the Board has a systematic bias against granting parole.

Among other things, respondent contends that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. These contentions, which are basic to all petitioner's claims, will be addressed first.

///

///

### A.   Due Process

3

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.

### 1. Liberty Interest

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause.  The right was created by the "expectancy of release provided in [the Nebraska parole statute.]"  That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts.  *Id.* at 11–12.  The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987).  There it held that a similar liberty interest was created even though the parole board had great discretion.  *Id.* at 381.  For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995).  *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz*, 442 U.S. 1 at 7, a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Allen*, 482 U.S. at 376-78 (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole).  In such a case, a prisoner has a liberty interest in parole that cannot be denied without adequate procedural due process protections.  *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

Respondent contends that California law does not create a liberty interest in parole.

4

But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on parole. In California, the panel or board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). Under the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The scheme requires that parole release be granted unless the statutorily defined determination (that considerations of public safety forbid it) is made. *Id.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest). In sum, the structure of California's parole scheme -- with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings.

Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct. 92 (2005), as authority for his contention that the California statute does not create a liberty interest in parole. This argument has been rejected by the United States Court of Appeals for the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

Respondent's argument as to liberty interest is without merit.

### 2. Due-Process Protections

Petitioner contends that denial of parole was not supported by "some evidence" and thus violated his due process rights.

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey,* No. 05-15275, slip op. 8335, 8344 (9th

Cir. July 13, 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The "some evidence" standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

In several recent cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. *Biggs*, 334 F.3d at 916-917. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." *Id.* at 916.

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. *Id.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded that relief for Irons was precluded by *Sass*. *See Irons*, slip op. at 8349. The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. *Id.*. Also, noting that the parole board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

### B.   Facts of Offense as Evidence of Unsuitability

Petitioner contends that the Board of Prison Terms's denial of parole based on the unchanging circumstances of his crime violated due process

At the time of the parole hearing at issue here, petitioner had served twenty years of his twenty-five years to life sentence. Thus, under the rationale in *Irons*, the dictum in *Biggs* does not apply here; that is, the *Biggs* suggestion that offense characteristics might not suffice as "some evidence" after the passage of sufficient time does not apply to petitioner, as he had not served his minimum sentence at the time of the hearing. *See*

7

*Irons*, slip op. at 8349.

In denying a parole date to petitioner the Board concluded that (1) the offense was carried out in an especially cruel and callous manner; (2) the victim was abused; (3) the petitioner showed a callous disregard for human suffering; (4) the motive was trivial in relation to the offense; (5) he had an unstable social history; (6) the need for stronger parole plans; and (7) the opposition of the prosecutor. Ex. G at 48-55. All these circumstances "tend to indicate unsuitability for parole" under California regulations. Cal. Code Regs. Title 15, § 2402(a), (c)(1)(A).

Petitioner had been beaten by the victim a few weeks before the offense. *Id.* at 47. He was informed by a friend where he could find the victim, who was lying in a drunken stupor on the hood of a car. *Id.* at 10-11. Petitioner was drunk and had been taking drugs. *Id.* at 12-13. Petitioner stabbed the victim several times in the heart, liver and kidney. *Id.* at 10. The victim died in surgery. *Id.*

Petitioner chose to murder the victim despite having had time to cool-off from the beating. And the victim was helpless and was stabbed multiple times. In view of the fact that petitioner had not yet reached the minimum twenty-five years of his sentence, the facts of the offense were sufficient in themselves to support the denial, and when the weakness of petitioner's parole plans is added, it is clear that there was "some evidence" to support the result.

Because there was no constitutional violation, the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

**C.     Failure to Set a Specific Term of Years**

Petitioner contends that his due process rights were violated by the Board's failure to set a term of years for him to serve, something he contends is required by California law. He is wrong that California law requires the Board to set a the term of years for prisoners sentenced to indeterminate terms. *See In re Dannenberg*, 34 Cal. 4th 1061, 1082-83 (2005). That is not required until the Board finds the prisoner suitable for parole. *Id.* Here

8

the Board found petitioner *not* suitable for parole, so under California law it was not required to set a term. There thus could be no due process right to such a term-setting arising from California law, and there is no Supreme Court case recognizing a federal due process right to it arising directly from the Due Process Clause. The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### D. Bias

Petitioner contends that the Board was biased. The record shows that the Board reviewed the evidence extensively and discussed it with petitioner and his attorney. Ex. G at 9-47. The Board's decision explains the facts it relied upon in finding him not suitable for parole. *Id.* at 48-54. Both these factors tend to negate the accusation of bias, and petitioner has not provided any evidence that would show otherwise. The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### CONCLUSION

Petitioner's motion for judicial notice (document number 12 on the docket) is **DENIED**. The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 11, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\HOUSTON369.RUL.wpd